IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

CARLOS E. LOPEZ-SIGUENZA a/k/a
CARLOS E. LOPEZ-SIGUENZA,

               Plaintiff,

     v.

MARK E. RODDY, ESQUIRE, et al.,

               Defendants.

Civil No. 13-2005 (JBS/JS)

**OPINION**

APPEARANCES:

Benjamin Folkman, Esq.
Folkman Law Offices, P.C.
1949 Berlin Road, Suite 100
Cherry Hill, NJ 08003
    -and-
James A. Barry, Esq.
Michael A. Galpern, Esq.
Locks Law Firm LLC
457 Haddonfield Road, Suite 500
Cherry Hill, NJ 08003
    Attorneys for Plaintiff Carlos E. Lopez-Siguenza

Tracy Riley, Esq.
Law Offices of Riley & Riley
100 High Street, Suite 302
Mt. Holly, NJ 08060
    Attorney for Defendants Mark E. Roddy, Esquire, Detective
    John Imfeld and Detective James Hipple

Brian P. Wilson, Deputy Attorney General
State of New Jersey
Office of the Attorney General
Division of Law
25 Market Street
P.O. Box 112
Trenton, NJ 08625
    Attorney for Defendants Atlantic County Prosecutor's Office
    and Janet Gravitz

**SIMANDLE**, Chief Judge:

**I.   Introduction**

Plaintiff Carlos Lopez-Siguenza claims he was falsely arrested and maliciously prosecuted for the crime of Sexual Assault of a Minor based upon false evidence of the alleged victim's age. After he pleaded guilty, was imprisoned and thereafter deported, the falsity of the victim's birth certificate came to light and his conviction was set aside.

This matter comes before the Court upon a motion to dismiss by Defendants Atlantic County Prosecutor's Office ("ACPO") and Assistant Prosecutor Janet Gravitz ("Gravitz") [Docket Item 14] and Plaintiff's cross-motion to amend [Docket Item 30.]

The principal questions presented are whether Defendants ACPO and Gravitz (collectively "County Defendants") are entitled to immunity and whether Plaintiff's Complaint and proposed Amended Complaint state a cognizable claim under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA") based on violation of the Fourth Amendment of the United States Constitution. Further, the Court must determine whether amendment naming Gravitz in her individual capacity would be futile.

Because County Defendants address Plaintiff's cross-motion to amend in their reply brief, and in the interest of efficiency, the Court will consider the merits of both motions.

2

For the reasons discussed below, the Court will grant County Defendants' motion to dismiss and deny Plaintiff's cross-motion to amend.

## II.  Background

Plaintiff, Carlos E. Lopez-Siguenza, brought this action after his conviction for Sexual Assault of a Minor was vacated, but not before serving a three year prison term and being deported to El Salvador.

The facts set forth here are those alleged in Plaintiff's Complaint which the Court must accept as true for purposes of the instant motions. Plaintiff is a native of El Salvador, who at all relevant times was residing in Northfield, New Jersey as a Legal Permanent Resident. (Compl. [Docket Item 1] ¶¶ 1-2.) On January 24, 2003, Melissa Aguilar Cruz ("Cruz") reported to the police and/or her social worker that she was a minor who had sexual intercourse with Plaintiff at various times in 2002. (Id. ¶ 10.) Cruz and/or her guardians gave the police a handwritten Honduran birth certificate for an individual named "Melissa Gabriela Aguilar Guerrero," which contained a Spanish language inscription for the date of birth, translated to English as March 3, 1987. (Id. ¶ 11.) The birth certificate contained a National Identification Number of "1501870076600." (Id.) The police relied on this birth certificate and assumed that Cruz was 14 years old and Plaintiff was 21 years old at the time they

3

engaged in sexual intercourse. (Id. ¶ 12.) On March 12, 2003, Plaintiff was arrested by Detectives John Imfeld ("Imfeld") and James Hipple ("Hipple") and charged with two counts of Aggravated Sexual Assault, two counts of Child Abuse, and two counts of Endangering Child Welfare. (Id. ¶ 13.)

On July 8, 2003, Mark E. Roddy, Esquire ("Roddy"), acting as Plaintiff's defense attorney, requested from the prosecutors a "certified and/or notarized copy of the alleged victim's birth certificate," but no such document was provided. (Id. ¶ 14.)

Plaintiff was indicted on one count of second degree Sexual Assault, one count of third degree Endangering the Welfare of a Child, and one count of fourth degree Child Abuse. (Id. ¶ 15.) On March 12, 2004, after being advised by Roddy that he had no chance of prevailing at trial, Plaintiff pleaded guilty to one count of second degree Sexual Assault of a Minor and was sentenced to three years in New Jersey State Prison. (Id. ¶ 16.) Plaintiff served his prison term, was detained by Immigration and Customs Enforcement, placed in removal proceedings, and deported to El Salvador. (Id. ¶¶ 17-18.)

After Plaintiff's deportation, his mother hired an attorney, Jorge Coombs, Esquire ("Coombs"), to investigate Plaintiff's immigration case. (Id. ¶ 19.) Coombs noticed a discrepancy between the name Cruz gave police and the name on the birth certificate. (Id. ¶ 20.) Cruz gave her name to police

4

as "Melissa Aguilar Cruz" rather than "Melissa Aguilar Guerrero." On July 28, 2011, Coombs sent a letter to Francisco Quezada ("Quezada"), Consul General of Honduras, in which he requested verification of the birth certificate of "Melissa Gabriela Aguilar Guerrero" with the National Identification Number "1501870076600." (Id. ¶ 21.) Coombs also sent an e-mail to the Honduran Consulate's staff attorney, Jose H. Palacios Guifaro, Esquire ("Guifaro"), requesting guidance on how to decipher the Honduran National Identification Number. (Id. ¶ 21.)

On August 2, 2011, Coombs received a letter from Quezada stating that his office could not verify the accuracy of the birth certificate, nor could his office find the name "Melissa Gabriela Aguilar Guerrero" or the National Identification Number "1501870076600." (Id.) On August 2, 2011, Coombs also received a response from Guifaro stating that he found a birth certificate for "Melissa Gabriela Andino Munoz" born on March 3, 1984 with a Honduran National Identification Number of "1501-1984-00766." (Id. ¶ 23.) Coombs learned from the e-mail that digits five through eight in the identification number correspond to the person's year of birth. (Id.) Coombs then verified that "Melissa Gabriela Andino Munoz" is currently registered as living in southern New Jersey. (Id. ¶ 25.) On July 28, 2011, Coombs spoke

with Jose Rivera Sinclair, an ex-boyfriend of Cruz, who stated that Cruz's age was well known in the community. (Id. ¶ 28.)

Plaintiff subsequently filed for Post-Conviction Relief, which was granted on August 2, 2012. (Id. ¶¶ 29-30.) Prosecutors did not oppose the motion, taking the position that there was probable cause for each count of the indictment, but prosecuting the case would cause wear and tear on the mental and emotional state of Cruz and her family. (Id. ¶ 29.) On August 17, 2012, prosecutors moved for an order to dismiss the indictment against Plaintiff. (Id. ¶ 31.)

Plaintiff filed this civil action on March 28, 2013. Plaintiff's Complaint alleges violations of 42 U.S.C. § 1983 and the NJCRA by Defendants Atlantic City Police Department, Imfeld, Hipple, the ACPO, and Gravitz.[1] [Docket Item 1.] On June 27, 2013, County Defendants filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). First, County Defendants argue that the ACPO and Gravitz in her official capacity, are entitled to sovereign immunity and are not persons amenable to suit under section 1983 or the NJRCA. Second, County Defendants argue that Plaintiff fails to establish a Fourth Amendment violation. Third, County Defendants

---

[1] Plaintiff's Complaint also contains claims against Roddy for legal malpractice, breach of fiduciary duty, and breach of contract.

contend that the doctrines of absolute and qualified immunity shield the ACPO and Gravitz from liability.

On September 13, 2013, Plaintiff filed his brief in opposition and cross-motion to amend, naming Gravitz in her individual capacity. [Docket Item 30.] Plaintiff's proposed Amended Complaint contains additional factual allegations that (1) Gravitz undertook investigatory acts, directed the acts of others in obtaining the handwritten birth certificate, and failed to properly authenticate the birth certificate before seeking an indictment; and (2) Gravitz failed to provide Plaintiff with a certified and/or notarized copy of Cruz's birth certificate. (Am. Compl. ¶¶ 12, 39-40, 50.)

The Court will first address County Defendants' arguments applicable to the ACPO and Gravitz in her official capacity before considering arguments applicable to claims in the proposed Amended Complaint against Gravitz in her individual capacity.

## III. Discussion

### A. Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that the plaintiff failed to set forth fair notice of what the claim

is and the grounds upon which it rests. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. at 678.

If a responsive pleading has been served, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). "The court should freely give leave when justice so requires." Id. The decision to grant leave to amend a complaint rests within the sound discretion of the trial court. Massarsky v. General Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983). The district court may deny leave to amend only if (a) the moving party's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the non-moving party; or (b) the amendment would be futile. Adams v. Gould, Inc., 739 F.2d 858, 864 (3d Cir. 1984). "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (citation omitted).

8

In assessing "futility," the court applies the same standard of legal sufficiency as applies under Rule 12(b)(6). Id.

## B. Plaintiff's Claims Under Section 1983 and the NJCRA Based on Violations of the Fourth Amendment

County Defendants argue that the allegations in Plaintiff's proposed Amended Complaint are identical to those in Plaintiff's Complaint and do not rise to the level of a Fourth Amendment violation necessary to establish claims under section 1983 and the NJCRA. County Defendants construe Plaintiff's allegations as a claim for malicious prosecution.

Plaintiff argues that his claims are based on false imprisonment where police lack probable cause to make an arrest. Specifically, Plaintiff emphasizes Gravitz's participation in the investigation of the facts underlying the charges against Plaintiff "before seeking an indictment." (Compl. ¶¶ 39, 50; Am. Compl. ¶¶ 39, 50.)

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege: (1) the violation of a right secured by the Constitution or laws of the United States and (2) that the alleged deprivation was committed or caused by a person acting under color of state law.[2] West v. Atkins, 487 U.S. 42, 48 (1988); Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

_____

[2] Section 1983 provides in relevant part:

Similarly, the NJCRA creates a private right of action for deprivations of "any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of [New Jersey]." N.J. Stat. Ann. § 10:6-2.

To state a claim for false arrest under the Fourth Amendment, plaintiff must establish: (1) that there was an arrest and (2) that the arrest was made without probable cause. James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012). "[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." O'Connor v. City of Philadelphia, 233 F. App'x 161, 164 (3d Cir. 2007) (citing Groman v. Township of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995)). "Probable cause to arrest exists when the facts and the circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to

---

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

believe that an offense has been or is being committed by the person to be arrested." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000) (citation omitted).

To state a claim for malicious prosecution under section 1983, a plaintiff must show that: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."[3] McKenna v. City of Philadelphia, 582 F.3d 447, 461 (3d Cir. 2009). The element of malice may be inferred from a lack of probable cause. Robinson v. Jordan, 804 F. Supp. 2d 203, 206 (D.N.J. 2011).

The Court finds that both Plaintiff's Complaint and proposed Amended Complaint allege a violation of the Fourth Amendment based on false arrest or false imprisonment because the factual allegations focus on the conduct of the police and

---

[3] New Jersey law requires the first four elements, but not the fifth. See Trabal v. Wells Fargo Armored Serv. Corp., 269 F.3d 243, 248 (3d Cir. 2001) ("Under New Jersey law, malicious prosecution has four elements. Plaintiff must establish that the defendant (1) instituted proceedings (2) without probable cause and (3) with legal malice; and (4) the proceedings terminated in favor of the plaintiff.").

Gravitz before Plaintiff received legal process. See Heck v. Humphrey, 512 U.S. 477, 484 (1994). The Complaint states that Plaintiff was arrested on March 12, 2003 and the police lacked probable cause to believe that Plaintiff had committed an offense. (Compl. ¶¶ 13, 33; see also Am. Compl. ¶¶ 14, 33.) Further, the Complaint states that, before Plaintiff's arrest and indictment, Gravitz and the police relied on a handwritten birth certificate containing a name different from that given by the complainant and ultimately proven to be invalid. Drawing inferences favorable to Plaintiff, the Court rejects County Defendant's contention that there are no factual allegations that Gravitz participated in a probable cause determination.[4] The Court is satisfied that Plaintiff's Amended Complaint, broadly construed, states claims under section 1983 and the NJCRA based on false arrest in violation of the Fourth Amendment. Therefore, County Defendants' motion to dismiss on these grounds is denied.

Further, the Court finds that both Plaintiff's Complaint and proposed Amended Complaint allege a violation of the Fourth Amendment based on malicious prosecution. County Defendants only argue that Plaintiff has failed to satisfy the elements of

---

[4] The Court has not considered State Defendants' argument based on materials extraneous to the pleadings. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."); see also Def. Reply [Docket Item 33] at 5.

probable cause and malice. As noted above, the Complaint states that Plaintiff was arrested without probable cause after Gravitz and the police relied on a handwritten birth certificate, later determined to be invalid. The Court recognizes that prosecutors are not required to "explore every potentially exculpatory lead before filing a criminal complaint." Trabal v. Wells Fargo Armored Serv. Corp., 269 F.3d 243, 251 (3d Cir. 2001). However, County Defendants' argument on these grounds is beyond the scope of a motion to dismiss. Factual allegations that the police and Gravitz lacked probable cause and relied on an invalid birth certificate are sufficient at this stage to infer malice and state a claim for malicious prosecution. Therefore, County Defendants' motion to dismiss on these grounds is denied.

**C.  Sovereign Immunity**

County Defendants argue that Plaintiff's claims against the ACPO and Gravitz in her official capacity should be dismissed because sovereign immunity applies.

Under the Eleventh Amendment, the Supreme Court "has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Edelman v. Jordan, 415 U.S. 651, 662-63 (1974). "[N]either a State nor its officials acting in their official capacities" may be sued for monetary relief under section 1983. Hyatt v. Cnty. of Passaic, 340 F. App'x 833, 836

13

(3d Cir. 2009) (quoting <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989)). Noting that the NJCRA is "substantially modeled after" section 1983, courts in the District of New Jersey have held that Eleventh Amendment sovereign immunity applies to claims under the NJCRA. <u>Slinger v. New Jersey</u>, Civ. 07-5561 (DMC), 2008 WL 4126181, at *5 (D.N.J. Sept. 4, 2008), <u>rev'd in part,</u> 366 F. App'x 357 (3d Cir. 2010) (dismissing all claims against State under the NJCRA because "[t]raditional common law principles, contemporary principles of statutory construction and common sense all demonstrate that the NJCRA does not pierce the State's sovereign immunity."); <u>Estate of Lydia Joy Perry ex rel. Kale v. Sloan</u>, Civ. 10-4646 (AET), 2011 WL 2148813, at *2 (D.N.J. May 31, 2011); <u>Green v. Corzine</u>, Civ. 09-1600, 2011 WL 735719, at *7 (D.N.J. Feb. 22, 2011).

State sovereign immunity extends to entities and persons who can show that, even though the State is not the named defendant, "the [S]tate is the real party in interest." <u>Fitchik v. New Jersey Transit Rail Operations, Inc.</u>, 873 F.2d 655, 659 (3d Cir. 1989) (citing <u>Edelman</u>, 415 U.S. at 663)). The Third Circuit has instructed courts to consider three factors: (1) whether payment of a judgment would come from the State's treasury; (2) the status of the entity under state law, and (3) the entity's degree of autonomy from state regulation. <u>Id.</u> at 659.

In addressing the first Fitchik factor, "a court must first determine in which capacity the prosecutor's office was acting when the actions that gave rise to the plaintiff's claims took place." Landi v. Borough of Seaside Park, Civ. 07-5319 (FLW), 2009 WL 606141, at *4 (D.N.J. Mar. 9, 2009). In Coleman v. Kaye, 87 F.3d 1491 (3d Cir. 1996), the Third Circuit distinguished between classic law enforcement and investigative functions, where prosecutors act as officers of the State, and administrative functions unrelated to criminal prosecution, where prosecutors act as employees of the county. Coleman v. Kaye, 87 F.3d at 1505-06; see also Wright v. State, 778 A.2d 442, 462 (N.J. 2001) (relying on Coleman and holding that State may be held vicariously liable for the tortious actions of county prosecutors performed during investigation, arrest, and prosecution for violations of state criminal law).

The Court finds that the allegations in Plaintiff's Complaint and proposed Amended Complaint relate to classic law enforcement and investigative functions. Plaintiff's Complaint states that the ACPO and Gravitz, "failed to properly authenticate the alleged handwritten birth certificate before seeking an indictment" and "failed to properly provide the Plaintiff with a certified and/or notarized copy of Cruz's birth certificate." (Compl. ¶ 39-40, 50-51; Am. Compl. 39-40, 50). There is no question that the alleged misconduct involves the

15

ACPO and Gravitz's legal knowledge and the exercise of discretion in light of that knowledge. In re Camden Police Cases, Civ. 11-1315 (RBK/JS), 2011 WL 3651318, at *7 (D.N.J. Aug. 18, 2011). Moreover, the allegations in the instant case present an even clearer example of prosecutorial functions than those addressing training and supervision where courts have found sovereign immunity applicable. See Hyatt v. Cnty. of Passaic, 340 F. App'x 833, 837 (3d Cir. 2009) (finding that procedures, policy, and training regarding sexually abused child witnesses required legal knowledge and discretion and therefore was related to their prosecutorial function); In re Camden Police Cases, 2011 WL 3651318, at *7 (finding that providing legal training and supervision of police officers is a prosecutorial rather than administrative function). Further, courts have consistently found that pre-charge investigation and charging decisions are traditional prosecutorial functions. Beightler v. Office of Essex Cnty. Prosecutor, 342 F. App'x 829, 832 (3d Cir. 2009) (holding that county prosecutor's office was "undeniably engaged in a classic law enforcement function when it charged [plaintiff] with unlawful possession of a firearm"); Palmerini v. Burgos, Civ. 10-210 (FLW), 2011 WL 3625104, at *9 (D.N.J. Aug. 15, 2011) (finding that allegations regarding decisions to charge plaintiff with various crimes, to consult with witnesses, and to converse with police officers, all

16

involve the performance of traditional law enforcement and investigative functions). In light of the above, and because Plaintiff has presented no argument that County Defendants' conduct falls outside traditional prosecutorial functions, the Court finds that Plaintiff's allegations relate to traditional prosecutorial functions and payment for judgment would come from the State's treasury.

Turning to the remaining <u>Fitchik</u> factors, the Court adopts the reasoning of its sister courts and concludes that the ACPO is a non-autonomous, state entity when performing its prosecutorial functions. <u>Landi</u>, 2009 WL 606141, at *5 ("It is clear that under New Jersey law, [a county prosecutor's office] is a state entity when performing its prosecutorial functions," and a prosecutor's office is not an autonomous entity when acting in its prosecutorial capacity because "New Jersey law mandates that the Attorney General maintain a supervisory role over county prosecutors exercising and enforcing law enforcement policy"). Therefore, the ACPO and Gravitz in her official capacity are entitled to sovereign immunity under the Eleventh Amendment.[5] The Court will grant State Defendants' motion to

---

[5] The same analysis applies to Gravitz in her official capacity because the Supreme Court has made clear that official capacity suits are simply an alternative to "pleading an action against an entity of which an officer is an agent." <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985) (quoting <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658, 690, n.55 1978)).

dismiss claims against the ACPO and Gravitz in her official capacity.[6]

### D.  Persons Amenable to Suit Under Section 1983 and NJCRA

Alternatively, County Defendants argue that Plaintiff's claims must be dismissed because they are not persons amenable to suit under section 1983 or the NJCRA. The Court agrees to the extent Plaintiff asserts claims against the ACPO and Gravitz in her official capacity.

To be liable under 42 U.S.C. § 1983, a defendant must be a "person." 42 U.S.C. § 1983. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, (1989). Accordingly, a cause of action under section 1983, "cannot be asserted against the State, its agencies, or its officials acting in their official capacities." Landi, 2009 WL 606141, at *6.

Here, both the ACPO and Gravitz are State agencies or officials. Therefore, Plaintiff's claims pursuant to section 1983 will be dismissed because State Defendants are not persons amenable to suit under the statute.

---

[6] Sovereign immunity would not bar suit against Gravitz in her individual capacity. Slinger v. New Jersey, 366 F. App'x 357, 360 (3d Cir. 2010) ("[T]he Eleventh Amendment does not bar suits brought against state officials in their individual capacities, even if the actions which are the subject of the suit were part of their official duties.").

The NJCRA is substantially similar to the federal civil rights statutes, and "courts have interpreted the statute 'in terms nearly identical to its federal counterpart; Section 1983.'" Baklayan v. Ortiz, Civ. 11-03943 (CCC), 2012 WL 1150842, at *6 (D.N.J. Apr. 5, 2012) (quoting Chapman v. New Jersey, Civ. 08-4130, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009)). Both the NJCRA and section 1983 premise liability on the conduct of a "person." Courts in this District have consistently interpreted the NJCRA as having incorporated Will. See Didiano v. Balicki, Civ. 10-4483 (RBK/AMD), 2011 WL 1466131, at *8 (D.N.J. Apr. 18, 2011), aff'd, 488 F. App'x 634 (3d Cir. 2012); Chapman, 2009 WL 2634888, at *3; Slinger v. New Jersey, Civ. 07-5561 (DMC), 2008 WL 4126181, at *7 (D.N.J. Sept. 4, 2008), rev'd in part, 366 F. App'x 357 (3d Cir. 2010). Therefore, Plaintiff's claims against the ACPO and Gravitz in her official capacity also fail as a matter of law because they are not persons amenable to suit under the NJCRA.[7]

### E.   Absolute Prosecutorial Immunity

County Defendants argue that Plaintiff's motion to amend should be denied as futile and Plaintiff's claims should be

---

[7] As with County Defendants' sovereign immunity argument, the argument that Defendants are not persons amenable to suit is not fatal to Plaintiff's proposed Amended Complaint to the extent Plaintiff asserts claims against Gravitz in her individual capacity.

dismissed because they are entitled to absolute prosecutorial immunity. Plaintiff contends that Gravitz is not entitled to absolute prosecutorial immunity for her role in investigating the claim and directing the police in their investigation of the alleged offense.

The Supreme Court has approved of absolute prosecutorial immunity, but only in relation to those actions "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976). "More than a mere defense to liability, prosecutorial immunity embodies the 'right not to stand trial.'" Odd v. Malone, 538 F.3d 202, 207 (3d Cir. 2008) (quoting In re Montgomery County, 215 F.3d 367, 373 (3d Cir. 2000)). Further, absolute prosecutorial immunity is a valid defense to an individual capacity suit. Kentucky v. Graham, 473 U.S. 159, 166-67 (1985) ("When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as objectively reasonable reliance on existing law.") (citing Imbler, 424 U.S. at 409); see also Hussein v. New Jersey, Civ. 09-1291 (DRD), 2010 WL 891843, at *7 (D.N.J. Mar. 10, 2010). Therefore, addressing the concept of absolute prosecutorial immunity is appropriate in a 12(b)(6) motion. Id.

A prosecutor bears the heavy burden of establishing entitlement to absolute immunity. Odd, 538 F.3d at 207 (citing

20

Light v. Haws, 472 F.3d 74, 80–81 (3d Cir. 2007) (internal

quotation omitted)). Courts begin with the presumption that

qualified rather than absolute immunity is appropriate. Id. at

208 (citing Carter v. City of Philadelphia, 181 F.3d 339, 355

(3d Cir. 1999)).

> As the Supreme Court has noted:
>
> Almost any action by a prosecutor, including his or her direct
> participation in purely investigative activity, could be said
> to be in some way related to the ultimate decision whether to
> prosecute, but we have never indicated that absolute immunity
> is that expansive. Rather, as in *Imbler,* we inquire whether
> the prosecutor's actions are closely associated with the
> judicial process.

Burns v. Reed, 500 U.S. 478, 495 (1991).[8] Therefore, "immunity

attaches to actions 'intimately associated with the judicial

phases of litigation,' but not to administrative or

investigatory actions unrelated to initiating and conducting

judicial proceedings." Odd, 538 F.3d at 208 (citing Giuffre v.

Bissell, 31 F.3d 1241, 1251 (3d Cir. 1994)).[9]

---

[8] In Burns, the Court considered whether absolute prosecutorial
immunity was applicable to (1) participation in a probable cause
hearing before issuance of a search warrant, and (2) legal
advice to the police regarding the use of hypnosis and the
existence of probable cause to arrest plaintiff. Burns, 500 U.S.
at 487. The Court held that absolute prosecutorial immunity
applied to the probable cause hearing, but not rendering legal
advice to the police. Id. at 492, 496.

[9] In Odd, the Third Circuit considered whether prosecutors were
entitled to absolute immunity where unindicted third-party
witnesses remained incarcerated after it was clear that their
testimony was not needed for an extended period of time. The
court found the prosecutors' conduct to be administrative in

The Third Circuit has stated that "prosecutorial immunity analysis focuses on the unique facts of each case and requires a careful dissection of the prosecutor's actions." Id.

Here, Plaintiff's proposed Amended Complaint focuses on two aspects of Gravitz's conduct: (1) Gravitz allegedly personally participated in investigatory acts and directed the investigators in their acts of obtaining the alleged birth certificate before Plaintiff was arrested and charged with an offense and before seeking an indictment, and (2) Gravitz failed to provide Plaintiff with a certified and/or notarized copy of Cruz's birth certificate after being charged. (Am. Compl. ¶¶ 39-40.)

The present case implicates the distinction between investigatory and prosecutorial functions. In Buckley v. Fitzsimmons, 509 U.S. 259 (1993), prosecutors allegedly

---

nature where they failed in their obligation to inform the relevant authorities that the cases in which the detained plaintiffs were to testify were continued or dismissed. Odd, 538 F.3d at 216. In Giuffre, the Third Circuit considered whether a prosecutor was entitled to absolute immunity where the defendant prosecutor directed officers to question plaintiff about whether certain property had been purchased with illegal drug proceeds and approved a transaction in which plaintiff forfeited his property to the county, which the county ultimately sold on the prosecutor's recommendation. Giuffre, 31 F.3d at 1252. The court concluded that the prosecutor's role in the negotiating and authorizing the allegedly improper sale of plaintiff's property involved administrative duties not entitled to absolute immunity. Id. at 1253.

fabricated evidence during the preliminary investigation of a crime and made false statements at a press conference regarding a grand jury indictment. Buckley, 509 U.S. at 261. The Court found neither act entitled to absolute immunity. Id. at 275, 278. Regarding the fabrication of evidence, the Court distinguished between the "advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand." Id. at 273-74. The Court reasoned that "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.'" Id. at 273-74 (citing Hampton v. Chicago, 484 F.2d 602, 608 (7th Cir. 1973)) (internal quotation omitted).

County Defendants rely on Kulwicki v. Dawson, 969 F.2d 1454 (3d Cir. 1992) for the proposition that immunity protects the decision to initiate prosecution even where malice is alleged. Kulwicki, 969 F.2d at 1465. However, County Defendants fail to address the additional holding in Kulwicki that the conduct of witness interviews before filing a criminal complaint is not protected by absolute immunity. Id. at 1466. While eschewing a bright line rule based on the filing of a criminal complaint,

23

the Third Circuit found that plaintiff's claims involved investigation rather than prosecution because the witnesses initiated contact with the district attorney's office and a criminal complaint charging plaintiff with a crime was filed two weeks after the interviews. Id.

Here, we must parse the allegations in Plaintiff's proposed Amended Complaint to examine whether Gravitz is entitled to absolute prosecutorial immunity for any or all of her alleged conduct. It is unclear at this stage of the case exactly what the investigation entailed or when the police obtained the handwritten birth certificate or whether the prosecutor had any role in obtaining the document. The Amended Complaint does not state explicitly if or when the police obtained an arrest warrant. However, the allegations, as stated on the face of the Amended Complaint, do not limit Gravitz's conduct to evaluating evidence in preparation for trial. Instead, the allegations refer to her "investigatory acts" and the direction of others before establishing probable cause to arrest Plaintiff or seek an indictment. These allegations of directing an ongoing investigation are sufficient to remove Gravitz's conduct before Plaintiff was charged with a crime from the protections of absolute immunity.

On the other hand, Gravitz's alleged failure to provide Plaintiff's attorney with a certified and/or notarized copy of

24

Cruz's birth certificate after being charged and indicted falls within the prosecutorial functions entitled to absolute immunity. Such conduct cannot be construed as investigatory and unquestionably involved Gravitz's prosecution of the case during which she acted as an advocate for the State. See Leventry v. Watts, Civ. 06-193, 2007 WL 1469041, at *3 (W.D. Pa. May 17, 2007) (finding prosecutor's alleged failure to cooperate with discovery occurred after filing of complaint when prosecutor acted in capacity as advocate entitled to absolute immunity); Deffibaugh v. Harvey, Civ. 09-1749, 2010 WL 2079770, at *3 (M.D. Pa. May 21, 2010) (holding that prosecutor's decisions regarding disclosure of documents and compliance with court discovery orders were shielded by absolute immunity because these decisions were related to his advocacy role in pending criminal proceedings). Therefore, Gravitz is entitled to absolute immunity, and the complaint against her in her individual capacity will be dismissed, only to the extent Plaintiff's Amended Complaint relies on her failure to provide Plaintiff's counsel with a certified copy of the complainant's birth certificate after Plaintiff was charged and indicted.

**F.  Qualified Immunity**

County Defendants further argue that they are entitled to qualified immunity because Gravitz did not know she was violating Plaintiff's constitutional rights by failing to

properly authenticate the birth certificate prior to Plaintiff's guilty plea. Plaintiff argues that his claim is based on violation of his Fourth Amendment rights when he was arrested and detained without probable cause, and Gravitz could have easily learned that the handwritten birth certificate was not valid.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court described the two-prong inquiry courts undertake in determining whether a governmental officer is entitled to qualified immunity. Saucier, 533 U.S. at 207. The Court must address whether "the officer's conduct violated a constitutional right" and "whether the right was clearly established." Id. at 201.

A right is clearly established when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v.

26

Creighton, 483 U.S. 635, 640 (1987). "This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" Pearson v. Callahan, 555 U.S. 223, 244 (2009) (quoting Wilson v. Layne, 526 U.S. 603, 614 (1999)). The Supreme Court has instructed that the qualified immunity inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Thomas v. Independence Twp., 463 F.3d 285, 300 (3d Cir. 2006) (quoting Saucier, 533 U.S. at 201).

Having found Gravitz is entitled to absolute immunity for the alleged failure to provide Plaintiff's counsel with a certified copy of the complainant's birth certificate after Plaintiff was charged and indicted, the only question remaining is whether Gravitz is entitled to qualified immunity for her alleged personal participation in investigatory acts and direction of investigators in obtaining the allegedly fraudulent birth certificate before Plaintiff was arrested and charged. As such, the issue is whether a reasonable prosecutor could have believed that the victim's statement of her own age and the handwritten birth certificate provided a basis for probable cause to believe that the alleged victim of the crime under investigation was a minor.

At the time of Plaintiff's arrest in 2003, it was clearly established that the Fourth Amendment prohibits arrests without probable cause. Berg v. Cnty. of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000). However, Gravitz is entitled to qualified immunity for her role in the investigation as a matter of law if it was objectively reasonable to believe that probable cause existed or that prosecutors of reasonable competence could disagree on whether the probable cause test was met. Vetere v. O'Reilly, Civ. 88-1635 (AMW), 1990 WL 124844, at *11 (D.N.J. Aug. 21, 1990), aff'd sub nom. Vetere v. Trumbull, 932 F.2d 962 (3d Cir. 1991) (quoting Robinson v. Via, 821 F.2d 913, 918 (2d Cir. 1987)). In Vetere, the court found county prosecutors entitled to qualified immunity where they approved and directed the seizure of photographs from plaintiff's residence believing that plaintiff had taken pictures of a girl under age 16 in violation of New Jersey law even though the prosecutors later discovered that the girl was age 17 at the time of plaintiff's arrest and charges were subsequently dismissed. Id. The court found defendants' conduct to be objectively reasonable and in good faith because defendants based their actions on a facially sufficient federal search warrant and an accompanying affidavit stating the girl's birth date. Id.

The facts of the present case are analogous to those in Vetere. For the purposes of this analysis the Court broadly

28

construes Plaintiff's allegations in the proposed Amended
Complaint that Gravitz undertook investigatory acts, directed
the acts of others in obtaining the handwritten birth
certificate, and failed to properly authenticate the birth
certificate before seeking an indictment. The Court finds
however that Gravitz maintained an objectively reasonable belief
that the complaining victim was accurate about her own age and
the handwritten birth certificate was genuine during the
investigation and that probable cause existed for Plaintiff's
arrest. Although it was later revealed to be fraudulent, there
is no allegation that the foreign birth certificate was so
facially deficient or inauthentic that Gravitz's reliance upon
it was unreasonable. Further, there is no evidence that Gravitz
acted in bad faith in directing Plaintiff's arrest or was aware
of exculpatory evidence that would have proved the complainant
was three years older than stated on the birth certificate. At
most, Gravitz's conduct amounts to an honest mistake regarding
the validity of a birth certificate that later proved to be
fraudulent after contacting the Consul General of Honduras and
the Honduran Consulate's staff attorney. While the Amended
Complaint alleges Gravitz failed in her duty to more thoroughly
investigate the authenticity of the foreign birth certificate,
such a failure would amount, at most, to negligence, which is
not actionable under section 1983. Believing the complaining

witness and the doctored Honduran birth certificate fall into
the category of an unfortunate mistake of judgment for which
this prosecutor receives qualified immunity for a constitutional
violation. Under the qualified immunity analysis, "officers can
have reasonable, but mistaken, beliefs as to probable cause . .
. and in those situations courts will not hold that they have
violated the Constitution." Saucier, 533 U.S. at 205. Therefore,
the Court finds Gravitz entitled to qualified immunity for her
conduct in the investigatory phase.

**IV.   Conclusion**

For the reasons discussed above, the Court will grant
County Defendants' motion to dismiss Plaintiff's claims against
the ACPO and Gravitz in her official capacity based on sovereign
immunity and because they are not "persons" amenable to suit
under section 1983 and the NJCRA. The Court will deny
Plaintiff's cross-motion to amend because Gravitz is entitled to
absolute immunity for her alleged failure to provide Plaintiff
with a certified copy of Cruz's birth certificate after
Plaintiff was charged and indicted and is entitled to qualified
immunity for her alleged role in directing the investigation and
failing to authenticate the complainant's birth certificate.
Because the Court finds Gravitz's conduct covered by absolute or
qualified immunity even under the proposed Amended Complaint,

amendment would be futile. An accompanying Order will be
entered.


__March 31, 2014__                    __/s Jerome B. Simandle__
Date                                  JEROME B. SIMANDLE
                                      Chief U.S. District Judge